## L. E. WILLIAMS v. THE STATE.

*No. 1171.   Decided November 13th, 1895.*

**1.   Practice—Limitation to Introduction of Evidence—Statute Construed.**

Art. 661, Code of Crim. Proc., provides that, "the court shall allow testimony to be introduced at any time before the argument of the case is concluded, if it appear that it is necessary to a due administration of justice."   Held:   (1) That the admission of testimony after the argument has begun and before it has closed, is in the sound discretion of the trial judge, and this discretion will not be revised unless it clearly appears to have been abused.   (2) This statute is an exception to the general rule, and the exception marks the limit of the power of the court in this regard.   (3) The lan-

guage of the statute above quoted, conveys the idea, that evidence should not be introduced after the close of the argument, in as strong terms as if the legislature had said so in direct language.

### 2. Administration of Justice.

The administration of justice is best conserved by adhering to the plain rules of law as enunciated in the statute.

### 3. Murder—Reopening Case After Close of Argument.

On a trial for murder, after the evidence had been introduced and the argument on both sides had been closed, the State was permitted, over the objections of defendant, to introduce witnesses to prove the name of the murdered party. Held: A direct violation of the provisions of the statute, for which, the judgment must be reversed.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

This appeal is from a conviction for murder in the first degree, with the penalty assessed at death.

The party alleged to have been murdered was Mrs. Lou Williams, wife of defendant.

A general statement of the case is not called for. As to the point upon which the case is disposed of on this appeal, the same is fully shown by defendant's fourth bill of exceptions, as follows:

"Be it known, that on the trial of the above entitled cause, the following proceedings were had, to-wit: After the evidence had been introduced, and after the argument of counsel on both sides had ended, the court read his charge to the jury, the charge having been theretofore properly filed, and the proper file and indorsement had been made thereon and officially signed by the clerk of the court. After reading the instructions to the jury, the court was about to hand the charge and indictment to the deputy sheriff in charge of the jury to be carried to the jury room in their retirement. At this point counsel for the defendant arose and, asking the court to have the jury wait a moment, verbally moved the court to instruct the jury to return a verdict of "not guilty," for the reason that the State had nowhere in its evidence proved that the name of the deceased was "Lou" Williams. Counsel said, further, that the indictment charged the defendant with the murder of "Lou" Williams, describing deceased in no other way; that the proof had disclosed only that defendant had killed a woman; that the woman was Mrs. (?) Williams, and the wife of the defendant; but had failed to prove that the woman's name was "Lou." The court thereupon instructed the sheriff to take the jury to their room for a few minutes, and when they left he examined the statutes for several minutes. While the court was reading the statutes, defendant's attorney informed the court that he had a written instruction to the same effect as his verbal request, and laid on the court's desk the requested charge in writing on that subject, which is on file marked "Refused" by the court. After examining the statutes the court stated, to counsel for the defendant, that without passing upon the question as to whether the State had or had not proved the woman's name to be "Lou," he would then permit the State to

introduce testimony on that point if so desired by the County Attorney. The County Attorney then asked for time to send for some of the witnesses, they having all been discharged the day before, when the argument began, and had gone home, which the court granted, first having inquired if there was any witnesses in the court now who could swear to the woman's name. To this action of the court the defendant's attorney objected, and began to read Art. 661, Code of Crim. Proc., and the notes thereunder, stating that he objected to the introduction of any evidence after the argument had ended. The court responded: "I am familiar with the statutes, but I do not believe that an obstacle of this kind should be permitted to interfere with the ends of justice;" and he permitted the County Attorney to take process for said witnesses. The defendant, by his attorney, excepted to this ruling of the court, and to the language of the court, on the ground that the ruling of the court was in direct violation of the statutes, which provide that no evidence should be permitted after the argument was ended, and was contrary to, and in violation of, the Constitution of the United States, and of the State of Texas, both of which provide that a man shall not be twice placed in jeopardy of life or liberty.

That the ruling was hurtful to the rights of the defendant, as the case was now entirely ended so far as the trial was concerned, the jury having been charged; and, that the only thing now to be done was to receive the verdict of the jury, which verdict should be, not guilty, and the jury should be so told.

To this action of the court defendant also excepted, on the ground that it was injurious to the rights of defendant and prejudicial for his cause for the court to take charge of the prosecution and publicly call witnesses in behalf of the State. At this point the court took a recess to await the arrival of the witnesses. To this delay defendant also excepted at the time.

All of the above objections and exceptions of defendant having been by the court overruled, the defendant demanded a bill of exceptions in regard thereto. The defendant's attorney further stated to the court, that he desired it to be understood that he was excepting, and would except to every word to be said and every step to be taken in this cause, and he desired that a record of the entire proceedings, from this point to the termination of the case, should be kept, in order that it should be fully understood that all was done over his objections, and his bill of exceptions should be understood as covering the entire proceedings.

This objection was based upon the grounds that any subsequent proceedings herein will be virtually a second trial, the first trial having been ended. He asks that this, his bill of exceptions, be signed and approved by the court, and by him ordered filed and made a part of the record, which is done.

The above is signed, with the explanation, "that during the entire proceedings set forth in this bill, from the time the oral motion was made

requesting the court to instruct the jury to return a verdict of not guilty, to the close, the jury were not in court."

*Robert B. Seay* and *Henry S. Crawford*, for appellant.—It is contended by appellant that the trial court erred in this. After the argument was made and fully ended, and after the general charge was given to the jury, the defendant moved the court to instruct the jury to render a verdict of acquittal in his behalf on the grounds that the State had failed to prove that the name of the deceased was Lou Williams, as alleged in the indictment. The State had only proved that the deceased was the wife of the defendant, whose name is Williams, when the law requires that her name shall be proven in full, as alleged in the indictment.

Over defendant's objection, the court suggested to, and allowed the State's attorney to reopen the case, had witnesses sent for and sworn and examined, and had the case reargued upon the point as to the name, and delivered to the jury a special charge in regard to the name. All this was done, as defendant claimed, after his trial had fully ended, and after the case had reached a point where, by the statutes and constitutional law, no steps could be taken, except to acquit the defendant, on the ground that the State had failed to make out its case by the evidence. Art. 661, Code Crim. Proc.; Thomas v. State, 1 Tex. Crim. App., 297; Thompson v. State, 37 Texas, 121.

Appellant insists that after the case was ended, and the jury charged, the State, having failed to make out its case, he was entitled to be acquitted, and requested the court to instruct the jury to that effect.

This request was by the court refused, over defendant's exception, and immediately after the case ended defendant filed his motion, still insisting that he should be discharged, and could not again be jeopardized after the trial had ended. He contends in this court that, although there is no special plea of jeopardy on file, yet the facts are apparent on this record that the defendant was entitled to a discharge, and as this right inured to him in the lower court, and he could not be legally deprived of it there, he is still entitled to the same right here. That it is the right and duty of this court to do for appellant what the trial court was in duty bound to do. That the trial court could not, over appellant's objections and exceptions, and in violation of law, deprive him of a most valuable right, and it is the duty of this court to do, and it has jurisdiction upon appeal to do, for defendant what the trial court could and should have done. 1 Bishop Crim. Law, 1012-1047.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was tried in the Criminal District Court, of Dallas County, on the charge of murder, was convicted of murder of the first degree, and his punishment assessed at death. From the judgment of the lower court he prosecutes this appeal. There is but one question presented in the record in this case which requires consideration by us. It appears from the bill of exceptions that after the

evidence for the State and appellant had been introduced, and after the arguments of the District Attorney and appellant's counsel had been closed, and the judge had read his charge to the jury, the court permitted the case to be reopened, and allowed evidence to be introduced by the State to prove that the name of the alleged murdered person was "Lou Williams," as charged in the indictment; and that thereafter the court allowed the State and appellant fifteen minutes each for argument before the jury on the new evidence offered. As stated, the appellant objected to this, and saved his bill of exceptions. The articles of our Code of Criminal Procedure relating to argument, and the introduction of evidence after argument has begun, are as follows: Article 660 regulates the proceedings on the trial of the case, requires the testimony on the part of the State to be first introduced. Then testimony on the part of the defendant and rebutting testimony on the part of the State and defendant may be offered. Article 667, authorizes the court to regulate the order of the argument, but, in all cases, the State's counsel shall have the right to make the concluding address to the jury. Article 668, limits the power of the court to restrict the argument to a less number of addresses than two on each side. Article 677, requires the court, after the argument of any criminal cause has been concluded, in all felony cases to deliver a written charge to the jury. Article 697, authorizes the jury, when they disagree as to the statement of any particular witness, upon applying to the court, to have such witness again brought upon the stand, and detail his testimony on the particular point of disagreement; and, in such case, he shall be instructed to make his statement in the language used upon his examination, as near as he can. Article 661, which is the only statute which authorizes the court to allow testimony to be introduced after the evidence has closed and the argument has begun, reads as follows: "The court shall allow testimony to be introduced at any time before the argument of the case is concluded, if it appear that it is necessary to a due administration of justice." This article has frequently been invoked in the trial courts, in order to introduce testimony after the argument of a cause has begun. Donahoe v. State, 12 Tex. Crim. App., 297; Thomas v. State, 11 Tex. Crim. App., 315; Hewitt v. State, 10 Tex. Crim. App., 501. And this appears to have been the practice before the adoption of the Code (see Nutt v. State, 19 Texas, 340), and it has been uniformly held, that the admission of testimony after the argument has begun and before it has closed, is in the sound discretion of the trial judge, and this discretion will not be revised unless it clearly appears to have been abused. (Timbrook v. State, 18 Tex. Crim. App., 1). We are not aware—though we have made a thorough research of the authorities—that the question presented in this case has ever been before this court, and so the construction of Art. 661, Code Crim. Proc., in this regard, is a new question with us. We have looked at the decisions of other States to see what light they shed on the question. In Alabama, we find one case only in which it is stated that it is

within the discretion of the trial court to allow evidence of venue after the close of the argument.    It is simply so held, without any reasoning or citation of authorities on the part of the court, and we presume that the State of Alabama had no such statute on the subject, as ours.    See, Dave v. State, 22 Ala., 23.    In Mary v. State, 5 Mo., 80, this question appears to have come before the court.    No statute is quoted, and the judge appears to have considered the matter as one of practice, in the absence of statutory regulation.    We quote as follows, from the case of Mary v. State:    "It appears by the bill of exceptions, that the State, by the prosecuting attorney, closed its evidence, and that the defendant gave none, and that then the court was about to adjourn until next day, before the argument could take place; whereon it was agreed, between the Circuit Attorney and the prisoner's counsel, under leave of the court, that the jury might disperse until the next morning, on the condition that the defendant should not and would not offer any testimony at all. The court adjourned until next morning, and the jury dispersed.    On the opening of the court the next day the jury came, and the State offered to re-examine some of the witnesses examined the day before, and to examine some others not examined at all.    The prisoner's counsel objected to this.    The court overruled the objection, and the witnesses were examined.    What the witnesses deposed to does not appear, nor do I consider it material it should appear.    The objection goes against the danger of the practice.    It seems to me that on this point the court erred.    I never have yet seen a case that goes as far as this case goes.    When the plaintiff has closed his evidence in chief, if the defendant gives none, he cannot, merely on the ground that he forgot something, be allowed to examine new witnesses, nor to re-examine old ones. This is not allowed, for two reasons:    First, because there must be an end of the examination; and, secondly, because to examine a witness after he has been discharged, and after the evidence is closed, is to allow him an opportunity to fill up gaps by perjury; and to call others, or the same, after they have mingled with the crowd, is of most dangerous consequence to truth and justice.    This is the general rule:    After the plaintiff has closed his case, he can only give thereafter rebutting testimony; but that can only take place when the other party gives some evidence, otherwise there can be nothing to rebut.    In the case at bar, the defendant had no testimony at all.    Consequently the evidence the State gave afterwards was not of that character.    There is no reason given on the record why the prosecution asked leave and was permitted to give the amendatory evidence.    It is possible there may be cases in which it might be allowed, but I cannot now think of them.    The case stands, then, on the ground that the prosecution discovered some defect in the evidence that might be supplied, and had leave, as matter of right, to amend his hold.    If this is permitted, what is to hinder parties from manufacturing evidence over night to fit the case, after, perhaps, they may have some hint from some unwary juror as to the opinion of the jury.    If such a door is once opened, both good and bad men will

enter the same.    I admit that good men would not take unlawful advantage of the privilege, but bad ones would; and as the law is not wise enough to distinguish between the bad and the good, it forbids both good and bad from the use of the privilege.    If this door were once opened, I venture to believe that life and property would be more and more insecure, and perjury become more than ever an article of purchase.    For these reasons, I am of the opinion that the judgment of the Circuit Court of Crawford County ought to be reversed."    Construing our statute (Article 661) according to its verbiage, and with reference to the object and intent of the legislature, what does its language import? As has already been shown from the articles quoted, our Code of Criminal Procedure attempts to regulate and control the order and proceedings in the trial of criminal cases.    It regulates the introduction of evidence and the argument of counsel, and there is but one contingency in which a witness is authorized to be called back before the jury after the argument has been concluded, and that is merely to repeat the testimony theretofore given in by him, and which can only be done at the instance of the jury itself.    No other article in our Code of Criminal Procedure authorizes a witness to be called before the jury after the argument is closed, and this, as will be seen, was not for the purpose of introducing new testimony, but to reiterate that which had been previously stated before the jury.    The general rule, as laid down by the statute, is that all testimony shall be adduced before the jury before the beginning of the argument.    Article 661, Code Crim. Proc., however, provides that in one contingency the court may authorize the introduction of evidence after the argument has begun and before its close, and under the ordinary rules of construction we are bound to construe this as an exception to the general rule, and the exception marks the limit of the power of the court in this regard.    It says, "evidence may be introduced before the close of the argument," and to our minds this language conveys the idea that evidence should not be introduced after the close of the argument, in as strong terms as if the legislature had said so in direct language.    If we had no statute on the subject, we might be inclined to enlarge the rule, and to admit testimony ad libitum, as emergencies appealing to the discretion of the court might arise after the jury had retired to consider the case; but still, if we had no statute, such a rule would be of doubtful propriety, and would render the trial of cases interminable; but, having a statute on the subject, which puts up the gap against the introduction of testimony after the argument has been concluded, we are forbidden to consult emergencies, or to make a new rule, founded upon judicial discretion outside the statute.    There must be an end to the introduction of evidence somewhere, and if we depart from our statute on the subject the question then would be, where will we erect the next barrier beyond which we would declare that no further evidence could be adduced?    We would simply be at sea, with no rule on the subject, save as judicial necessity might suggest.    So, whatever hardship may result in any particular case, we believe that the administration of justice is

best conserved by adhering to the plain rules of law as enunciated by our statute. As we believe, the object and purpose of the article in question was to mark the limit beyond which no court should be authorized to allow the introduction of testimony; and as the court in this case, in admitting the testimony of witnesses as to the name of the deceased party, violated the provisions of our statute on this subject, this case must be reversed. It has been suggested that the statement of facts in the case shows that the name "Lou Williams," as alleged in the indictment, was sufficiently proven, as she was repeatedly by witnesses alluded to as Mrs. Williams, the wife of L. E. Williams, the appellant. This is doubtful; but, conceding that the contention is correct, this matter should have been given to the jury in the shape where the evidence left it at the close of the argument, and they should have been afforded no new evidence on this or any other question involved in the case. In the view we take of the case, it is unnecessary to discuss other assignments, but for the error of the court in reopening the case after the close of the argument the judgment of the lower court is reversed, and the cause remanded.

*Reversed and Remanded.*